IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) | COMPLAINT |
| | ) ) | JURY TRIAL DEMAND |
| v. | ) ) ) ) | |
| FANATICS RETAIL GROUP FULFILLMENT, LLC. | ) ) ) | |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and to provide appropriate relief to Charging Party Vincent Perkins. As alleged with greater particularity below, Defendant Fanatics Retail Group, LLC. ("Fanatics") discriminated against Mr. Perkins when it subjected him to a hostile work environment, denied him a promotion, retaliated against him, and subjected him to disparate treatment on the basis of race.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Fanatics is a leader in licensed sports merchandise, operating more than 300 online and offline stores, including e-commerce business for the NFL, MLB, and NBA, and more than 200 collegiate and professional team properties.

5. At all relevant times, Fanatics has continuously been doing business in the State of Florida and the City of Jacksonville, and Fanatics has continuously had at least 15 employees.

6. At all relevant times, Fanatics has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7. Fanatics was formerly called Fanatics Retail Group Fulfillment, Inc. On approximately December 22, 2017, Fanatics Retail Group Fulfillment, Inc. filed Articles of Conversion, converting the corporation to a limited liability company and changing its name.

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Mr. Perkins filed a charge of discrimination with the Commission alleging violations of Title VII by Fanatics.

9. All conditions precedent have been fulfilled.

## STATEMENT OF FACTS

10. Mr. Perkins is a black male.

11. On approximately July 18, 2012, Fanatics hired Mr. Perkins to work in the Screen Department.

12. The Screen Room Department at Fanatics was significantly divided by race, and white employees were treated better than black employees, including Mr. Perkins.

13. For instance, employees at Fanatics reported as follows:

    a. "The Entire Department is much divided."

    b. "A lot of division. Certain [white] employees can do certain things while others [black employees] can't."

    c. "A lot of divisions – color wise – certain ones are exempt from doing certain responsibilities – not doing any work."

    d. "There is a lot of separation of the races. The white employees can sit around and not do anything but if the black employees sit around they get yelled at."

14. White Team Leads rejected screens completed by black employees, but if a white employee later submitted the same screen, it was accepted.

15. White employees are allowed to punch in, and sit around talking, but black employees are told not to punch in.

16. White employees are told about changes in the schedule in advance, while black employees are told at the last minute.

17. White employees are allowed to sit and talk, while black employees (with the same titles and responsibilities) are told to clean up.

18. White Team Leads and co-workers constantly cursed and yelled at the black employees, but not at white employees.

19. According to a former Operations Administrator at Fanatics, "The way these people at this company are treated is deplorable! If you're white and they consider you one of their own, you can do no wrong . . . sadly, if you are a minority, you are treated like uneducated slave labor."

20. The General Manager of Fanatics referred to black employees as monkeys or Africans.

21. A Team Lead called Mr. Perkins the "n-word" on his first day of work.

22. Mr. Perkins either heard directly, or was advised of the following comments made by white supervisors, managers and employees at Fanatics:

    a. "Africans in Europe know their place, but not in the United States."

    b. "Why does he have those big Aunt Jemima lips?"

    c. "Aunt Jemima lips;"

    d. "I mean can you read? I'm not racist but a lot of you [black] guys can't read."

    e. "You boys do a good job sweeping up."

    f. "We don't need any outbreak monkeys here."

    g. "I don't like working with the brothers"

    h. "I don't like working with the lazy n-words."

    i. "I have many friends that said racist things but that doesn't make them bad people."

23. A white Human Resources Manager at Fanatics called a black employee "Baboon," and made other race-based comments. This Human Resources Manager was the

individual responsible for investigating at least one of Mr. Perkins' complaints of race discrimination.

24. Black employees were routinely told to keep complaints "in house" and not report them to Human Resources.

25. During his tenure, Mr. Perkins was told that he was going to be promoted into the Screen Lead Supervisor position.

26. Prior to the promotion, however, Mr. Perkins complained about the treatment of black employees.

27. After his complaint, Mr. Perkins' supervisor told him that he would never be promoted.

28. The Screen Lead Supervisor position was given to a less-qualified Hispanic applicant.

29. Mr. Perkins made several complaints to managers and human resources personnel during his employment, but Fanatics did not take prompt corrective action in response to his complaints.

30. According to Fanatics' Former Operations Administrator, "If any employee complains about the injustice being done, that person will be retaliated [against]. Retaliation at this place from the HR Manager is a 100% That employee gets Fired or is Force[d] out."

31. Following his charge of discrimination, Mr. Perkins was subjected to increased harassment and behavior designed to get Mr. Perkins to quit, including but not limited to the following:

    a. Giving a white employee part of his area to slow down his production;

    b. Cutting his employees from 6 to 3;

   c. Having a supervisor store his lighter and cigarettes on Mr. Perkins' desk (when such materials are not permitted in the Screen Room);

   d. Supervisors attempting to falsely write him up; and

   e. Supervisors throwing out Mr. Perkins' write-ups of white employees.

32. On another occasion when Mr. Perkins complained, the new General Manager read his complaint to his supervisor during a meeting with all three of them; thereafter she refused to speak to Mr. Perkins.

33. Mr. Perkins has suffered damages as a result of Fanatics' treatment and behavior towards him.

## STATEMENT OF CLAIMS

34. Paragraphs 9 through 33 are incorporated herein.

35. Fanatics subjected Mr. Perkins to a hostile work environment by his supervisors and co-workers based on his race, black.

36. Fanatics subjected to Mr. Perkins to disparate treatment on the basis of race.

37. Fanatics failed to promote Mr. Perkins because he is black, and in retaliation for complaining about race discrimination.

38. Fanatics further retaliated against Mr. Perkins by subjecting him to hostile behavior and disparate treatment designed to force him to quit.

39. The effect of the practices complained of in paragraphs 9 to 33 above has been to deprive Mr. Perkins of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, black.

40. The unlawful practices complained of in paragraphs 9 to 33 were intentional and caused Mr. Perkins to suffer emotional distress including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/ or physical damages.

41. The unlawful employment practices complained of in paragraphs 9 to 33 above were intentional and done with malice or with reckless indifference to the federally protected rights of Mr. Perkins.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Fanatics, its officers, agents, servants, employees, and all persons in active concert or participation with it, from engaging in race-based discrimination;

B. Grant a permanent injunction enjoining Fanatics, its officers, agents, servants, employees, and all persons in active concert or participation with it, from engaging in retaliation;

C. Order Fanatics to institute and carry out policies, practices, and programs which provide equal employment opportunities for black employees which eradicate the effects of its past and present unlawful employment practices;

D. Order Fanatics to make Mr. Perkins whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial;

E. Order Fanatics to make Mr. Perkins whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

F. Order Fanatics to make Mr. Perkins whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

G. Order Fanatics to pay Mr. Perkins punitive damages for its intentional, malicious and reckless conduct, as described above, in amounts to be determined at trial;

H. Grant a judgment in EEOC's favor;

I. Award such further relief as the Court deems necessary and proper in the public interest; and

J. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment
Opportunity Commission
131 M Street, N.E.
Washington, D.C. 20507

ROBERT WEISBERG
Regional Attorney
Florida Bar No: 285676

9

                                        KIMBERLY A. CRUZ
                                        Supervisory Trial Attorney
                                        Florida Bar No: 153729

                                        <u>s/Kristen Foslid</u>
                                        Kristen Foslid
                                        Senior Trial Attorney
                                        Florida Bar No:  0688681
                                        Equal Employment Opportunity Commission
                                        Miami District Office
                                        100 SE 2nd Street, Suite 1500
                                        Miami, Florida 33131
                                        Telephone: (305) 808-1803
                                        Fax:  (305) 808-1835