IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
CIVIL ACTION NO. 18-cv 00900-TJC-PDB

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

           Plaintiff,

VINCENT PERKINS

           Plaintiff/Intervenor
  v.

FANATICS RETAIL GROUP
FULFILLMENT, LLC.

           Defendant.
_____/

## COMPLAINT IN INTERVENTION OF VINCENT PERKINS

Intervenor VINCENT PERKINS, by and through undersigned counsel, files this Complaint as party plaintiff, as authorized by Fed. R. Civ. P. 24.

NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and to provide appropriate relief to Plaintiff Vincent Perkins. As alleged with greater particularity below, Defendant Fanatics Retail Group, LLC. ("Fanatics") discriminated against Mr. Perkins when it subjected him to a hostile work environment, denied him a promotion, retaliated against him, and subjected him to disparate treatment on the basis of race.

JURISDICTION AND VENUE

1

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Fanatics is a leader in licensed sports merchandise, operating more than 300 online and offline stores, including e-commerce business for the NFL, MLB, and NBA, and more than 200 collegiate and professional team properties.

5. At all relevant times, Fanatics has continuously been doing business in the State of Florida and the City of Jacksonville, and Fanatics has continuously had at least 15 employees.

6. At all relevant times, Fanatics has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7. Fanatics was formerly called Fanatics Retail Group Fulfillment, Inc.  On approximately December 22, 2017, Fanatics Retail Group Fulfillment, Inc. filed Articles of Conversion, converting the corporation to a limited liability company and changing its name.

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Mr. Perkins filed a charge of discrimination with the Commission alleging violations of Title VII by Fanatics.

9. All conditions precedent to the institution of Intervenor's Florida Civil Rights Act (hereinafter, FlaCRA) claims have been fulfilled.

10. All other conditions precedent have been fulfilled.

STATEMENT OF FACTS

11. Mr. Perkins is a black male.
12. On approximately July 18, 2012, Fanatics hired Mr. Perkins to work in the Screen Department.
13. The Screen Room Department at Fanatics was significantly divided by race, and white employees were treated better than black employees, including Mr. Perkins.
14. For instance, employees at Fanatics reported as follows:
    a. "The Entire Department is much divided."
    b. "A lot of division.  Certain [white] employees can do certain things while others [black employees] can't."
    c. "A lot of divisions – color wise – certain ones are exempt from doing certain responsibilities – not doing any work."
    d. "There is a lot of separation of the races. The white employees can sit around and not do anything but if the black employees sit around they get yelled at."
15. White Team Leads rejected screens completed by black employees, but if a white employee later submitted the same screen, it was accepted.
16. White employees are allowed to punch in, and sit around talking, but black employees are told not to punch in.
17. White employees are told about changes in the schedule in advance, while black employees are told at the last minute.
18. White employees are allowed to sit and talk, while black employees (with the same titles and responsibilities) are told to clean up.
19. White Team Leads and co-workers constantly cursed and yelled at the black employees, but not at white employees.
20. According to a former Operations Administrator at Fanatics, "The way these people at this company are treated is deplorable! If you're white and they consider you one of their own, you can do no wrong . . . sadly, if you are a minority, you are treated like uneducated slave labor."
21. The General Manager of Fanatics referred to black employees as monkeys or Africans.
22. A Team Lead called Mr. Perkins the "n-word" on his first day of work.

23. Mr. Perkins either heard directly, or was advised of the following comments made by white supervisors, managers and employees at Fanatics:
    a. "Africans in Europe know their place, but not in the United States."
    b. "Why does he have those big Aunt Jemima lips?"
    c. "Aunt Jemima lips;"
    d. "I mean can you read? I'm not racist but a lot of you [black] guys can't read."
    e. "You boys do a good job sweeping up."
    f. "We don't need any outbreak monkeys here."
    g. "I don't like working with the brothers"
    h. "I don't like working with the lazy n-words."
    i. "I have many friends that said racist things but that doesn't make them bad people."
24. A white Human Resources Manager at Fanatics called a black employee "Baboon," and made other race-based comments. This Human Resources Manager was the individual responsible for investigating at least one of Mr. Perkins' complaints of race discrimination.
25. Black employees were routinely told to keep complaints "in house" and not report them to Human Resources.
26. During his tenure, Mr. Perkins was told that he was going to be promoted into the Screen Lead Supervisor position.
27. Prior to the promotion, however, Mr. Perkins complained about the treatment of black employees.
28. After his complaint, Mr. Perkins' supervisor told him that he would never be promoted.
29. The Screen Lead Supervisor position was given to a less-qualified Hispanic applicant.
30. Thereafter, Fanatics failed to consider Mr. Perkins for subsequent promotions as they became available in the Screen Department.
31. Mr. Perkins made several complaints to managers and human resources personnel during his employment, but Fanatics did not take prompt corrective action in response to his complaints.
32. According to Fanatics' Former Operations Administrator, "If any employee complains about the injustice being done, that person will be retaliated [against]. Retaliation at this place from the HR Manager is a 100% That employee gets Fired or is Force[d] out."
33. Following his charge of discrimination, Mr. Perkins was subjected to increased harassment and behavior designed to get Mr. Perkins to quit.

34. For example, Fanatics employees continued to make race-related comments, including use of the term "monkey" in reference to black employees.
35. In addition, Mr. Perkins was subject to the following harassment by Fanatics:
    a. Giving a white employee part of his area to slow down his production;
    b. Cutting his employees from 6 to 3;
    c. Having a supervisor store his lighter and cigarettes on Mr. Perkins' desk (when such materials are not permitted in the Screen Room);
    d. Supervisors attempting to falsely write him up; and
    e. Supervisors throwing out Mr. Perkins' write-ups of white employees.
36. On another occasion when Mr. Perkins complained, the new General Manager read his complaint to his supervisor during a meeting with all three of them; thereafter she refused to speak to Mr. Perkins.
37. Mr. Perkins has suffered damages as a result of Fanatics' treatment and behavior towards him.

## COUNT I
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

38. Paragraphs 11-25, 31-35, and 37 are incorporated herein.
39. Fanatics subjected Mr. Perkins to a hostile work environment by his supervisors and co-workers based on his race, black, in violation of Title VII.
40. The effect of the practices complained of in Paragraphs 11-25, 31-35, and 37 has been to deprive Mr. Perkins of equal employment opportunities because of his race.
41. The unlawful employment practices complained of in Paragraphs 11-25, 31-35, and 37 were intentionally done with malice and/or reckless indifference to the federally protected rights of Mr. Perkins.

## COUNT II
## FAILURE TO PROMOTE IN VIOLATION OF TITLE VII

42. Paragraphs 11-30, 34, and 37 are incorporated herein.
43. Fanatics failed to promote Mr. Perkins because he is black in violation of Title VII, and failed to consider him for subsequent promotional opportunities.
44. The effect of the practices complained of in Paragraphs 11-30, 34, and 37 has been to deprive Mr. Perkins of equal employment opportunities because of his race.

45. The unlawful employment practices complained of in Paragraphs 11-30, 34, and 37 were intentionally done with malice and/or reckless indifference to the federally protected rights of Mr. Perkins.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

46. Paragraphs 11, 25-32, and 37 are incorporated herein.
47. Fanatics failed to promote Mr. Perkins in retaliation for complaining about race discrimination in violation of Title VII.
48. The effect of the practices complained of in Paragraphs 11, 25-32, and 37 has been to deprive Mr. Perkins of equal employment opportunities because of his race.
49. The unlawful employment practices complained of in Paragraphs 11, 25-32, and 37 were intentionally done with malice and/or reckless indifference to the federally protected rights of Mr. Perkins.

## COUNT IV
## HOSTILE BEHAVIOR IN VIOLATION OF TITLE VII

50. Paragraphs 11-37 are incorporated herein.
51. Fanatics retaliated against Mr. Perkins by subjecting him to increased hostile behavior designed to force him to quit in violation of Title VII.
52. The effect of the practices complained of in paragraphs 11-37 above has been to deprive Mr. Perkins of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, black.
53. The unlawful practices complained of in paragraphs 11-37 were intentional and caused Mr. Perkins to suffer emotional distress including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/or physical damages.
54. The unlawful employment practices complained of in paragraphs 11-37 above were intentional and done with malice or with reckless indifference to the federally protected rights of Mr. Perkins.

## COUNT V
## RACIAL DISCRIMINATION IN VIOLATION OF FLORIDA CRA

55. This count sets forth a claim against Fanatics for unlawful racial discrimination in violation of the Florida Civil Rights Act, Fla. Stat. §760.10.

56. Paragraphs 11-37 above are incorporated by reference as if fully set forth herein.
57. Fanatics engaged in unlawful employment practices by subjecting Mr. Perkins to racial discrimination which was severe and pervasive, and by depriving Mr. Perkins of equal employment opportunities and otherwise adversely affecting Mr. Perkins' status as an employee because of his race, black. The unlawful conduct resulted in physical and emotional pain and suffering, embarrassment and humiliation to Mr. Perkins.
58. The unlawful employment practices set out in paragraphs 11-37 above were done with malice and/or with reckless indifference to the federally protected rights of Mr. Perkins.

COUNT VI<br>UNLAWFUL RETALIATION IN VIOLATION OF FLORIDA CRA

59. This count sets forth a claim of unlawful employment practices by Fanatics in violation of Fla. Stat. §760.10(7), by failing to promote Mr. Perkins in retaliation for opposing unlawful employment activities by Fanatics, including complaining about and objecting to racial discrimination.
60. Paragraphs 11-37 above are incorporated by reference as if fully set forth herein.
61. A causal connection exists between Mr. Perkins' protected activity of complaining about the aforementioned racial discrimination and the adverse actions taken against Mr. Perkins by Fanatics.
62. The effect of the conduct set out in paragraphs 11-37 has been to deprive Mr. Perkins of equal employment opportunities and otherwise adversely affect Mr. Perkins' status as an employee in retaliation for Mr. Perkins' opposition to unlawful employment practices. This unlawful conduct resulted in emotional pain and suffering, embarrassment, and humiliation to Mr. Perkins.
63. The unlawful employment practices set out in paragraphs 11-37 were done with malice and/or with reckless indifference to the federally protected rights of Mr. Perkins.

PRAYER FOR RELIEF

Wherefore, Mr. Perkins respectfully requests that this Court:

A. Grant a permanent injunction enjoining Fanatics, its officers, agents, servants, employees, and all persons in active concert or participation with it, from engaging in race-based discrimination;

B.  Grant a permanent injunction enjoining Fanatics, its officers, agents, servants, employees, and all persons in active concert or participation with it, from engaging in retaliation;

C.  Order Fanatics to make Mr. Perkins whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial;

D.  Order Fanatics to make Mr. Perkins whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

E.  Order Fanatics to make Mr. Perkins whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F.  Order Fanatics to pay Mr. Perkins punitive damages for its intentional, malicious and reckless conduct, as described above, in amounts to be determined at trial; and

G.  Award such further relief as the Court deems necessary and proper.

## JURY TRIAL DEMAND

Mr. Perkins requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

**ANUM LAW**

_____
OBINNA P. ANUM, ESQ.
Florida Bar No. 0119851
9526 Argyle Forest Boulevard. Suite B2
Jacksonville, Florida 32222
Telephone:  (904) 657-4590
Facsimile:  (904) 512-5260
Email: obi@anumlaw.com
Attorney for PLAINTIFF/INTERVENOR